IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JASON TYWANN BELL, | ) | |
|     Petitioner, | ) | Civil Action No. 7:21-cv-00094 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| J.C. STREEVAL, | ) |     United States District Judge |
|     Respondent. | ) | |

**MEMORANDUM OPINION**

Pending before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner Jason Tywann Bell. In his petition, Bell argues that, after *Johnson v. United States*, 576 U.S. 591 (2015), one of the two convictions used to sentence him as a career offender under then-mandatory U.S. Sentencing Guideline § 4B1.1 would no longer qualify as a crime of violence.[1] Thus, his argument continues, he should not have been sentenced as a career offender. Bell argues that, without the career offender enhancement, his guidelines range would have been significantly lower and he should have been released from custody already.

This § 2241 petition was filed on November 27, 2018, in the District of South Carolina, where Bell was incarcerated at the time. After more than two years of proceedings in that court, including two separate stays pending decisions from higher courts, that court learned that Bell had been transferred to USP Lee, which is located within the Western District of Virginia. Although the petition was fully briefed, the District of South Carolina transferred the petition

---

[1] "The Guidelines were initially binding on district courts," but in *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court "rendered them 'effectively advisory.'" *Beckles v. United States*, 137 S. Ct. 886, 894 (2017) (quoting *Booker*, 543 U.S. at 245). The court refers in this opinion to the pre-*Booker* sentencing guidelines, under which Bell was sentenced, as the "mandatory" guidelines.

here on February 16, 2021.[2]

After transfer here, the court ordered the respondent to file a new response and appointed the Federal Public Defender to represent Bell. Respondent filed a motion to dismiss, and Bell's attorney filed a response after being directed to do so by the court. The motion to dismiss is now fully briefed and ripe for disposition.

Bell pursued a number of post-conviction challenges before this one, and the court will recite that procedural history in order to ensure that an accurate picture is presented of the timing of his challenges. That history is set forth at length in Respondent's most recent motion to dismiss (Dkt. No. 96), and Bell does not dispute it in his response. (*See generally* Dkt. No. 100.) Much of that history, though, is not crucial to the court's ultimate resolution of Bell's petition, which the court decides on a narrow basis. Specifically, the court agrees with respondent that Bell cannot meet the second prong of the test set forth in *United States v. Wheeler*, 886 F.3d 415 (4th Cir. 2018), and thus this court lacks jurisdiction to consider his § 2241 petition. For this reason, discussed in more detail herein, the court will grant respondent's motion to dismiss and dismiss Bell's petition without prejudice for lack of jurisdiction.

I. BACKGROUND

**A. Bell's Conviction and Sentencing**

In April 2003, Bell was named in several counts of a superseding indictment in the Middle District of North Carolina, and he eventually pled guilty to two: (1) attempted bank

---

[2] As previously noted by this court (Dkt. No. 87 at 1 n.2) and as both parties appear to agree (*see* Dkt. No. 96 at 1 n.2; Dkt. No. 100 at 2 n.1), transfer to this court was not necessary, as the South Carolina court retained jurisdiction over the petition. Regardless, this court has jurisdiction over Bell's current custodian, and sees no reason to engage in "jurisdictional ping-pong" or to further prolong resolution of Bell's petition. *See Wilkerson v. Warden Williamsburg Fed. Corr. Inst.*, No. 1:18CV211, 2020 WL 760397, at *2 (N.D. W. Va. Feb. 14, 2020), *aff'd*, 830 F. App'x 108 (4th Cir. 2020) (exercising jurisdiction in similar circumstance despite the transferor court's "likely error," because the "transfer order was not so 'clearly erroneous' under existing case law as to work a manifest injustice" in the case and because the court sought to avoid any further delay after the "jurisdictional ping-pong that has already occurred") (internal citation omitted).

robbery in violation of 18 U.S.C. §§ 2113(a) and 2 (Count Two); and (2) carrying and using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Four).  *United States v. Bell*, No. 1:03CR00046-1 (M.D.N.C.) (hereinafter "*Bell*"), ECF No. 38.

At the time of Bell's sentencing, the U.S. Sentencing Guidelines were mandatory.  *See supra* note 1.  The sentencing court determined that Bell was a career offender under U.S.S.G. § 4B1.1 based on two prior convictions: a South Carolina conviction for felony armed robbery and a North Carolina conviction for conspiracy to commit robbery with a dangerous weapon.  *Bell*, ECF No. 116 (Presentence Investigation Report (PSR) ¶¶ 36, 38, docketed in this case at Dkt. No. 34-1).)  Bell's criminal history category was a VI, both because of his criminal history points and because of his career offender status.  (PSR ¶¶ 42–43.)  His mandatory guideline range was 262 to 327 months, including the 84-month mandatory consecutive sentence for his firearm offense.  (PSR ¶ 62.)  The sentencing court imposed a sentence of 190 months on Count Two and 84 months on Count Four, to run consecutively, for a total sentence of 274 months' imprisonment.  *Bell*, ECF No. 71.  Bell also was sentenced to 5 years' supervised release and a $200 special assessment.  *Id.*  Judgment was entered on October 1, 2003, *id.*, and Bell did not appeal.

B. **Bell's First 28 U.S.C. § 2255 Motion**

Bell filed his first 28 U.S.C. § 2255 motion in September 2004, in the Middle District of North Carolina, raising an alleged sentencing error pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004).  The magistrate judge recommended that the motion be denied.  On April 1, 2005, the district judge adopted the recommendation, dismissed the motion with prejudice, and denied a certificate of appealability.  *Bell*, ECF No. 90.  Again, Bell did not appeal.

C. **Bell's Letter Motion Raising *Johnson* Claim**

*Johnson* was decided on June 26, 2015. About two months later, on August 28, 2015, Bell filed a letter motion with the Middle District of North Carolina seeking relief under *Johnson*. *Bell*, ECF No. 105. Bell claimed in that motion, as he does now, that his prior North Carolina conviction for conspiracy to commit robbery with a dangerous weapon was no longer a crime of violence under *Johnson* and that he was no longer a career offender. *Id.* The court advised that it would treat the letter as a § 2255 motion, but the court dismissed the motion because it was not on the proper forms, without prejudice to Bell refiling on proper forms. *Bell*, ECF No. 110.

### D. Bell's First § 2241 Petition Is Dismissed as a Second or Successive 28 U.S.C. § 2255 Motion.

Instead of refiling a § 2255 motion using the proper forms as directed, Bell filed his first § 2241 petition.[3] Adopting the magistrate judge's recommendation, to which Bell did not object, the sentencing court dismissed the motion as a successive § 2255 motion on February 1, 2016. *Bell v. Matevousian*, No. 1:15-cv-01079, ECF No. 4 (adopting report and recommendation of magistrate judge, ECF No. 2). Once more, Bell did not appeal.

### E. Bell's 2016 Authorized Successive § 2255 Motion

On May 31, 2016, Bell requested authorization from the Fourth Circuit to file a § 2255 motion raising a *Johnson* claim, and the Fourth Circuit gave him such authorization on June 23, 2016. *Bell*, ECF No. 113. Bell's § 2255 motion was filed in the sentencing court the same day. *Bell*, ECF No. 114. He argued there, as he does here, that under *Johnson*, his prior North Carolina conviction for conspiracy to commit robbery with a dangerous weapon was no longer a

---

[3] "Bell captioned the document as being filed in the United States Eastern District of California, where Petitioner is housed, but he apparently submitted it to the United States Court of Appeals for the Ninth Circuit Court, which mailed it to" the Middle District of North Carolina. *Bell v. Matevousian*, No. 1:15CV01079 (M.D.N.C. Jan. 4, 2016 Rec. & Order), ECF No. 2.

crime of violence, and he was improperly sentenced as a career offender. *Bell*, ECF No. 114. The government was ordered to respond, but the case was twice held in abeyance, pending decisions in *Beckles v. United States*, 137 S. Ct. 886 (2017), and *United States v. Brown*, 868 F.3d 285, 297 (4th Cir. 2017). The holdings in *Beckles* and *Brown* will be discussed in the context of addressing Bell's claims. *See supra* Section II-B. But the Fourth Circuit's decision in *Brown* effectively dictated the outcome in Bell's § 2255 motion. After the Supreme Court denied certiorari in *Brown* in October 2018, the district court dismissed Bell's motion as untimely on April 15, 2019. *Bell*, ECF No. 126. Bell did not appeal. Instead, he continued to pursue relief through the instant § 2241 petition, which was filed in November 2018, while his 2016 § 2255 motion was still pending.

**F. Bell's 2021 Authorized Successive § 2255 Motion**

Bell has since received authorization from the Fourth Circuit—in June 2021—to file another § 2255 motion, this time based on *United States v. Davis*, 139 S. Ct. 2319 (2019).[4] *Bell*, ECF No. 129. His latest § 2255 motion remains pending before the sentencing court. *Bell*, ECF Nos. 130–134.

II. DISCUSSION

**A. The Availability of 28 U.S.C. § 2241 To Challenge A Sentence**

Ordinarily, a motion pursuant to § 2255, not § 2241, is the appropriate vehicle for challenging a conviction or sentence. However, the "savings clause" in § 2255 allows a prisoner to challenge the validity of his conviction and/or his sentence by filing a § 2241 petition for writ

---

[4] In one of the filings in the instant case, Bell's South Carolina counsel noted that Bell may have a separate claim for relief based upon *United States v. Davis*, __ U.S. __, 139 S. Ct. 2319 (2019), and *United States v. Taylor*, 979 F.3d 203 (4th Cir. 2020), *cert. granted,* 141 S. Ct. 2882 (2021), in which he could challenge the validity of his § 924(c) conviction in Count Four. (Dkt. No. 78 at 2.) But counsel stated that "counsel does not . . . represent Bell on this issue as it is not specifically related to the issues presented in this § 2241 petition." (Dkt. No. 78 at 2.) Similarly, appointed counsel in this court did not raise any issue based on either *Davis* or *Taylor*. Accordingly, the applicability of those cases to Bell's § 924(c) conviction is not before this court.

of habeas corpus, if he demonstrates that § 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e).[5]

Under *United States v. Wheeler*, 886 F.3d 415 (4th Cir. 2018), a petitioner may proceed under § 2241 to challenge the legality of his sentence only if he satisfies all of the following four conditions:

1. At the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence;

2. Subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review;

3. The prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and

4. Due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

*Wheeler*, 886 F.3d at 429; *see also Lester v. Flournoy*, 909 F.3d 708, 712 (4th Cir. 2018). The *Wheeler* court also affirmed that the requirements of the savings clause are jurisdictional. Thus, a § 2241 petitioner relying on the savings clause to challenge his sentence must meet the *Wheeler* test for the district court to have subject-matter jurisdiction to evaluate the merits of the petitioner's claims. *Wheeler*, 886 F.3d at 423–26. Respondent concedes that Bell has adequately satisfied the first *Wheeler* prong, but contends that he cannot satisfy the second and third prongs.

**B. Bell's Claim**

Bell raises here the same argument that he did in several of his other post-conviction challenges, including his authorized 2016 § 2255 motion, which was denied as untimely. He asserts that changes in the law subsequent to his sentencing (and specifically the Supreme

---
[5] This provision "is commonly referred to as the 'savings clause' as it arguably saves § 2255 from unconstitutionally suspending habeas corpus." *Lester v. Flournoy*, 909 F.3d 708, 711 (4th Cir. 2018).

6

Court's decision in *Johnson*) mean that he no longer qualifies as a career offender under

U.S.S.G. § 4B1.1(a). As it existed when Bell was sentenced, that provision stated:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). Bell claims that subsection (3) is no longer satisfied because his prior North Carolina conviction for conspiracy to commit robbery with a dangerous weapon is no longer a crime of violence.

When Bell was sentenced, U.S.S.G. § 4B1.2(a) defined a crime of violence as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). Additionally, in the commentary to that provision, application note 1 stated that the term "crime of violence" includes a number of specific offenses, listing murder, manslaughter, kidnapping, aggravated assault, and robbery, among others, although it did not include conspiracy. In both U.S.S.G. § 4B1.2(a) as it existed then, and the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), which has a similar provision, the language of subsection (1) is known as the "elements clause" or "force clause." The first half of subsection (2) is called the enumerated clause because it enumerates generic crimes, and the second half of subsection (2)—"or otherwise involves conduct that presents a serious potential risk of physical

injury to another"—is often referred to as the "residual clause."

*Johnson v. United States*, 576 U.S. 591 (2015), struck down the similar residual clause of the ACCA as unconstitutionally vague. Bell's argument is that, without the residual clause, his prior conviction for conspiracy to commit robbery with a dangerous weapon is no longer a crime of violence under § 4B1.2. This is so because, according to Bell, his prior North Carolina conspiracy conviction does not qualify as a crime of violence under the enumerated clause or force clause, either. To support his argument as to the force clause, Bell points to Fourth Circuit's decision in *United States v. McCollum*, 885 F.3d 300 (4th Cir. 2018), which held that in order to determine whether a conspiracy offense is a crime of violence under the force clause, a court must review not only of the elements of the substantive offense, but also the elements of the conspiracy offense. In *McCollum*, because the federal crime of conspiracy at issue (conspiracy to commit murder in aid of racketeering) did not require an overt act (like generic conspiracy does), it was not categorically a crime of violence and could not satisfy the force clause. 885 F.3d at 309. Bell notes that, like federal conspiracy, a conspiracy offense under North Carolina law does not require an overt act. *See States v. Oliphant*, 747 S.E.2d 117, 125 (N.C. Ct. App. 2013) ("[N]o overt act is necessary to complete the crime of conspiracy."). (*See* Dkt. No. 78 at 4.)

Respondent offers no argument in response to Bell's contention that his North Carolina conspiracy conviction would not qualify as a crime of violence under the force clause. (*See generally* Dkt. No. 82.) Thus, the parties appear to agree on this point, and there is other authority that supports Bell's argument. For example, in *United States v. White*, 571 F.3d 365, 368 (4th Cir. 2009), *abrogated on other grounds by Johnson*, 576 U.S. 591 (2015), a pre-*Johnson* case, the Fourth Circuit held that the precise offense challenged here by Bell—North

Carolina conspiracy to commit robbery with a dangerous weapon—did not satisfy the force clause of the ACCA. Subsequent to *Johnson* other cases have reached the same conclusion as to similar offenses. *See, e.g.*, *United States v. Simms*, 914 F.3d 229, 233–34 (4th Cir. 2019) (holding that conspiracy to commit Hobbs Act robbery is not a crime of violence under the force clause); *United States v. Cooper*, 410 F. Supp. 3d 769, 772 (S.D. W. Va. 2019) (concluding that conspiracy to commit robbery under West Virginia law, which does not require an overt act, is not a crime of violence under the guidelines). *See also United States v. Taylor*, 979 F.2d 203, 205 (4th Cir. 2020) (noting that "[t]he parties agree that conspiracy to commit Hobbs Act robbery" is not a crime of violence under the ACCA's force clause).

Because Bell's prior conspiracy conviction does not satisfy the force clause, it is a proper predicate under the mandatory career offender only if it constitutes a crime of violence under the residual clause of U.S.S.G. § 4B1.2. If the residual clause of the mandatory guideline is unconstitutionally vague, then Bell's conspiracy conviction was not a proper predicate, and Bell was not a career offender. If, however, the residual clause of the mandatory guideline remains valid, then Bell has not shown that settled law has changed under the second *Wheeler* prong.

As noted, the *Johnson* decision struck down the ACCA's residual clause as unconstitutionally vague. It did not address the guidelines at all. In *Beckles*, 137 S. Ct. 886 (2017), the Court concluded that *Johnson*'s reasoning did not extend or in any way invalidate the career offender guideline, at least as to defendants who were sentenced under the *advisory* Guidelines. *Beckles*, 137 S. Ct. at 895. The *Beckles* Court did not address whether *Johnson*'s reasoning could apply to the mandatory Guidelines. *Id.* at 896 ("We hold only that the advisory Sentencing Guidelines, including § 4B1.2(a)'s residual clause, are not subject to a challenge under the void-for-vagueness doctrine."). *Beckles*, therefore, did not change any settled law

9

applicable to Bell, as required to satisfy *Wheeler*'s second requirement.

The Fourth Circuit's decision in *United States v. Brown*, 868 F.3d 297 (4th Cir. 2017), *cert. denied*, 139 S. Ct. 14 (2018), did not extend the reasoning of *Johnson* to the mandatory guidelines, either. *Brown* discussed a *Johnson* claim challenging the mandatory career offender guideline in the context of determining whether a 28 U.S.C. § 2255 motion was timely under § 2255(f)(3). That provision allows a § 2255 motion to be filed within a year of "the date on which the right asserted was initially recognized by the Supreme Court." *Brown*, 868 F.3d at 301. The *Brown* Court explained that by leaving the question open (as the Supreme Court did in *Beckles*), the Supreme Court had not yet recognized the "right" that a vagueness challenge applies to the mandatory guidelines. *Brown*, 868 F.3d at 302. Because the Supreme Court had not itself extended *Johnson* to the career offender guideline, even for defendants sentenced while the Guidelines were mandatory, the *Brown* Court concluded that *Johnson* did not start anew the one-year limitations period under § 2255(f)(3). *See also United States v. Rumph*, 824 F. App'x 165 (4th Cir. 2020) (affirming dismissal of § 2255 motion as untimely where movant was sentenced under the mandatory career offender guideline and relied on *Johnson* because movant had not asserted a right "newly recognized by the Supreme Court" and thus could not proceed under § 2255(f)(3)). Because § 2253(f)(3) did not render his § 2255 motion timely, Brown's motion, filed more than a year after his conviction became final, was time-barred. 868 F.3d at 302–03.

The *Brown* Court acknowledged that, if it were considering the same claim on direct appeal, the court "might have had the inferential license necessary to credit [his] interpretations of the negative implications found in *Booker*, *Johnson*, and *Beckles*." *Id.* at 304. But in the context of § 2253(f)(3), "only the Supreme Court can recognize the right" that could render the

10

petitioner's motion timely. *Id.* at 304. And the court reasoned that it was "constrained from reading between the lines of *Booker*, *Johnson*, and *Beckles* to create a right that the Supreme Court has yet to recognize." *Id.*[6]

Bell argues that the procedural vehicle here is different than in *Brown* and that this court can—and should—conclude that the reasoning of *Johnson* (in conjunction with *Booker* and *Beckles)* applies with equal force to invalidate the residual clause of the mandatory career offender guideline. The primary problem with Bell's argument is that, although some circuits have extended *Johnson* to invalidate the residual clause in the mandatory career offender guideline, the Fourth Circuit has not. Nor has the Supreme Court. Neither *Johnson* nor *Beckles* changed settled law applicable to Bell because neither held that the residual clause of the mandatory career offender guideline was unconstitutional or invalid. And in *Brown*, which occurred in a different procedural context, the Fourth Circuit refused to extrapolate from *Booker*, *Johnson*, and *Beckles* to conclude that the residual clause of the mandatory career offender guideline was unconstitutional because of vagueness. Accordingly, none of those decisions, including *Johnson*, changed the settled law of the Supreme Court or of the Fourth Circuit as it relates to Bell's sentencing under the mandatory career offender guideline.

Bell's suggestion that this court can itself determine that a change exists (or should exist) is contrary to Fourth Circuit law. As the Fourth Circuit recently explained, the "settled substantive law that must have changed is the "settled law of this circuit or the Supreme Court." *Young v. Antonelli*, 982 F.3d 914, 918 (4th Cir. 2020). The *Young* court expressly cautioned that

---

[6] When the Supreme Court denied certiorari in *Brown*, Justice Sotomayor, joined by Justice Ginsburg, dissented from the denial. *Brown v. United States*, 139 S. Ct. 14 (2018) (Sotomayor, J., dissenting from denial of certiorari). In doing so, the dissent recognized that there was a circuit split on the issue of whether the residual clause of the mandatory guidelines was invalid under *Johnson*, noted that "the Court has thus far left the validity" of sentences like Brown's "an open question," and further stated that the case "presents an important question of federal law that has divided the courts of appeals and in theory could determine the liberty of over 1,000 people." *Id.* at 15–16.

"[i]f neither the Supreme Court nor this Court had [changed the law], the district court could not make the change on its own." *Id.*

*Young*'s proclamation is consistent with cases granting relief under *Wheeler*, in which the courts relied on either a Supreme Court or a court of appeals decision to identify the changed substantive law. *See, e.g.*, *Wheeler*, 886 F.3d at 429–30 (identifying Fourth Circuit decision that changed the law); *Young*, 982 F.3d at 918 (pointing to Supreme Court decision, which the *Young* Court then relied upon to change the law, in the appeal of the § 2241 itself); *Lester*, 909 F.3d at 712 (explaining that Fourth Circuit, in reliance on a Supreme Court decision, had issued a published decision changing the law and thus the second *Wheeler* prong was satisfied).[7] Like it did in *Young*, the Fourth Circuit could itself change the law in addressing an appeal from this court's ruling, and it could elect to extend *Johnson* to the mandatory career offender guideline. *But see Ham v. Breckon*, 994 F.3d 682, 695 n.9 (4th Cir. 2021) (characterizing *Young*'s decision to create the change in substantive circuit law as part of its *Wheeler* analysis a "drastic step" that "should be used sparingly . . . and only when a change in Supreme Court precedent necessarily dictates a change in our circuit law"), *petition for cert. filed,* No. 21-763, 2021 WL 5506428 (U.S. Nov. 23, 2021). But it is the court of appeals or the Supreme Court that can change the "settled circuit law," not this one. *See Young*, 982 F.3d at 918.

---

[7] Bell correctly notes that in *Lester*, the Fourth Circuit found that a § 2241 petitioner could challenge, pursuant to *Wheeler*, his sentence under the then-mandatory career offender guideline when subsequent law later showed that his predicate convictions were no longer convictions for purposes of the career offender guideline. But in *Lester*, the claim was not based on *Johnson.* Instead, the petitioner was relying on *Chambers v. United States*, 555 U.S. 122, 127–28 (2009), which held that the generic crime of failing to report to a prison was not a crime of violence, and a later Fourth Circuit case holding that the escape offense used as a predicate for *Lester*'s career offender enhancement was not a crime of violence. Based on these decisions (and with the respondent's concession), the Fourth Circuit found that the second *Wheeler* requirement was satisfied. The primary issue in *Wheeler* was whether the petitioner's misclassification as a career offender was a "fundamental defect" under the fourth *Wheeler* prong, and the Fourth Circuit concluded that it was. Similarly, the fact that Bell was subject to a longer mandatory guideline range than he would be if *Johnson* were applied to the mandatory guideline*,* might satisfy the fourth *Wheeler* requirement. But satisfying one or two of *Wheeler*'s requirements is insufficient to bestow jurisdiction on this court; if any one is missing, then jurisdiction is lacking. *Braswell v. Smith*, 952 F.3d 441, 447 (4th Cir. 2020) ("[W]e independently examine whether all four prongs of the *Wheeler* test are met.").

In sum, neither the Supreme Court nor the Fourth Circuit has held that the residual clause of the mandatory career offender guidelines is unconstitutional. Because there has not been a change in settled circuit law, Bell cannot satisfy the second *Wheeler* requirement. *Accord Lyles v. Warden, FCI Bennettsville*, Case No. 1:19-cv-00207, 2021 WL 6426622, at *4 (Dec. 14, 2021) (Report and Recommendation) (concluding that § 2241 petitioner sentenced under the mandatory guidelines could not satisfy the second *Wheeler* prong because his "argument based upon *Johnson* is foreclosed by the decisions in *Beckles* and *Brown*"); *Smith v. Breckon*, No. 7:19CV00016, 2020 WL 1236313, at *6 (W.D. Va. Mar. 13, 2020) (holding petitioner, who raised a *Johnson* claim similar to Bell's, failed to establish the second *Wheeler* prong), *aff'd sub nom. Smith v. Brecken*, 818 F. App'x 245 (4th Cir. 2020), *cert. denied,* 141 S. Ct. 1257 (2021).

Because Bell cannot satisfy the second *Wheeler* requirement,[8] he fails to meet the *Wheeler* test to show that § 2255 is inadequate and ineffective to test the legality of his sentence. Accordingly, this court lacks jurisdiction over his § 2241 petition.

III.  CONCLUSION

For the reasons stated herein, Bell cannot proceed under § 2241 and his petition will be dismissed for lack of jurisdiction. An appropriate order will be entered.

Entered: February 3, 2022.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

[8] In light of its ruling, the court need not address either the retroactivity of any changed law or any of the remaining *Wheeler* prongs.